UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:07-CV-180-FL

| | |
|---|---|
| DEAN URASH, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Dean Urash ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB and SSI payments on 7 November 2005, alleging disability beginning 31 October 2005. (R. 42-44, 145-50). Both claims were denied initially and upon reconsideration. (R. 25-34, 37-39). A hearing before the Administrative Law Judge ("ALJ") was held on 20 December 2006, at which Claimant was represented by counsel. (R. 151-67). On 21 June 2007, the ALJ issued a decision denying Claimant's claims. (R. 7-19). On

12 September 2007, the Appeals Council denied Claimant's request for review. (R. 3-7). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

Judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g) (2007). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) finding that the severity of Claimant's seizure impairment does not meet or equal the requirements of Listing 11.02; (2) erroneously assessing Claimant's credibility; and (3) relying exclusively on the Medical-Vocational Guidelines listed in 20 C.F.R. § 404, Subpart P, Appendix 2 ("the Grids") in determining Claimant was capable of other employment existing in the national economy. Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 1. ("Pl.'s Mem."). In the alternative, Claimant asserts there is new and material evidence that should be incorporated into the record and considered by the ALJ on remand pursuant to sentence six of 42 U.S.C. § 405(g). Pl.'s Mem. at 19-23.

3

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 12). Next, the ALJ determined Claimant had the following severe impairments: (1) dislocated left hip; (2) left clavicle fracture; and (3) seizures. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] and sit, stand and/or walk six hours each in an eight hour work day. *Id.* He found further that Claimant has unlimited use of the upper and lower extremities for pushing and pulling. *Id.* The ALJ also identified the following non-exertional limitations: no climbing ladders, ropes or scaffolds and no exposure to hazards. (R. 13). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible based upon the medical evidence and Claimant's own statements regarding his daily activities. (R. 18). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a construction laborer. (R. 18). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, s/he can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c)

4

demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was thirty-six years old and unemployed. (R. 154-55). Claimant attained an eleventh grade education. (R. 155). Claimant was last employed with a plumbing company for approximately one and a half months. (R. 155).

Claimant testified that he is unable to work primarily due to seizures associated with epilepsy. (R. 156). He experiences "full-blown" seizures two to three times a month, in addition to five to ten "small" seizures a month. (R. 157). Claimant admitted to not taking medication as prescribed due to financial difficulties. (R. 157). However, Claimant stated he continues to have seizures even when he takes his medication. (R. 157). Claimant explained he has applied to receive medications at no cost but without success. (R. 159). Claimant acknowledged using marijuana once or twice a week for medicinal purposes and in particular, to control his seizures. (R. 163). He explained he purchases the marijuana with money from cutting grass or walking dogs for people in his neighborhood. *Id.* When asked why he did not use these earnings to purchase his seizure medication, Claimant responded, "I still couldn't afford it. It's too expensive." (R. 163).

Claimant explained further that he also endures right shoulder pain and left shoulder and hip pain. (R. 156). Claimant described the pain associated with his right shoulder as an eight on a scale of one to ten. *Id.* Claimant does not take pain medication on a regular basis, explaining

5

he has "learned just to try to ignore [the pain] the best [he] can." (R.157). Claimant typically sleeps four to five hours each night as a result of pain. (R. 159).

As for daily activities, Claimant stated he feeds and walks his three dogs, washes dishes, does the laundry, vacuums, carries out the trash, cleans the kitchen and living rooms and mows the lawn. (R. 158, 160). Claimant is unable to drive as his license was revoked following a car accident, the cause of which was an epileptic seizure. (R. 155, 161). Claimant explained he is confined to the house most of the time; however, he attends church two to three times per month and goes shopping with his girlfriend on occasion. (R. 162).

## DISCUSSION

**I.   This case should not be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence.**

Claimant urges this Court to remand this case under sentence six of 42 U.S.C. § 405(g) ("sentence six") in order for the ALJ to consider evidence not previously presented to the ALJ or the Appeals Council. Pl.'s Mem. at 19-23. For the reasons provided below, this evidence does not meet the regulatory requirements for new evidence; and therefore, remand is not warranted.

Claimant must satisfy three prerequisites to merit a remand on the basis of newly discovered evidence: (1) the evidence must be new; (2) it must be material; and (3) there must be "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Evidence is new if it is not duplicative or cumulative of that which is already in the record. *Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted). Evidence is material if it relates to the period on or before the date of the ALJ's decision, 20 C.F.R. §§ 404.970(b), 416.1470(b), and there is a "reasonable possibility that the new evidence would have changed the outcome" of the case. *Wilkins*, 953 F.2d at 96 (citing

*Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)). In this case, the relevant time period extends from 31 October 2005 (Claimant's alleged disability onset date) to 21 June 2007 (the date of the ALJ's decision). (R. 19, 42).

Claimant submits the following additional evidence: (1) a declaration dated 22 April 2008 and a neuropsychological evaluation dated 22 December 2007 by Antonio Puente, Ph.D.; [DE 20-3, Ex. 1] (2) Claimant's declaration dated 6 May 2008 stating he was not aware of the need for neuropsychological testing and that he did not have the means to pay for the examination [DE 19-2, Ex. 2]; (3) medical records from Grand Strand Regional Medical Center dated 31 October 2005 [DE 19-3, Ex. 3]; and (4) medical records from New Hanover Regional Medical Center dated January 2007 through August 2007 [DE 20-2, Ex. 4]. Review of the evidence proffered by Claimant shows that he has failed to carry his burden under sentence six.

First, with respect to the declaration and evaluation by Dr. Puente, this Court is unable to determine from the record whether this evidence pertained to events, signs, and symptoms that occurred during the relevant time period. Moreover, Dr. Puente stated that he believed Claimant has suffered more major seizures; however, he provides no medical records supporting this statement. *See Craig*, 76 F.3d at 590 (stating a physician's opinion should be accorded significantly less weight if it is not supported by clinical evidence); *see also* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

7

Next, as for Claimant's reasons for failing to undergo psychological evaluation, the Court notes first that Claimant was represented by counsel at the time his case was before the ALJ. *See Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997) ("[W]hen an applicant for social security benefits is represented by counsel the [ALJ] is entitled to assume that the applicant is making his strongest case for benefits.") (quoting *Glenn v. Secretary of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). Second, consultive examinations are p urchased at the expense of the SSA, not the Claimant; thus, Claimant's financial status is irrelevant. *See* 20 C.F.R. §§ 404.1519, 416.919.

Third, with respect to the medical evidence from Grand Strand Regional Medical Center, these records consist of a history and physical report from Claimant's 31 October 2005 hospitalization due to a motor vehicle accident and are cumulative of medical evidence already contained in the record. In particular, this additional evidence provides a summary of the various diagnostic studies performed, all of which are reflected in the record and in the ALJ's findings. (R. 16, 88-110).

Finally, the medical evidence from New Hanover Regional Medical Center is not material. First, the medical records pre-dating the ALJ's decision do not contain information from which the ALJ could reasonably have reached a different result had it been before him. Rather, these records provide essentially the same assessment of Claimant's seizure disorder that are already reflected in the record and in the ALJ's findings, including Claimant's subjective complaints of seizures, medication noncompliance, alleged inability to pay and marijuana abuse. [DE 20-2, Ex. 4 at 1-2, 5-7], (R. 13, 16). Second, the 7 August 2007 record, which post-dates the ALJ's decision and indicates Claimant's blood drug level is within the therapeutic range, does

8

not relate to the period on or before the ALJ's decision. Moreover, even if this medical record did relate to the relevant time period, it is immaterial for the additional reason that "there is convincing evidence of intermittent noncompliance...[; thus,] little weight should be given to sporadicially (sic) obtained anticonvulsant blood levels, even if they are in the therapeutic range." S.S.R. 87-6, 1987 WL 109184, at *3 (Nov. 30, 1986). As noted by the ALJ and by physicians in the additional material, Claimant's intermittent non-compliance is well-documented. Accordingly, this Court finds that the additional evidence submitted by Claimant does not warrant remand.

## II. The ALJ properly determined Claimant is not disabled *per se* under Listing 11.02.

Claimant argues that the ALJ erred by failing to find that his seizure impairment meets or equals Listing 11.02, the Listing for epilepsy. *See* Pl.'s Mem. at 9-14. This Court disagrees.

To be disabled under the Listings, the claimant may present evidence either that the impairment meets or is "medically equivalent" to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); *see also* 20 C.F.R. §§ 404.1526, 416.926. An impairment meets a listing if it satisfies all the specified medical criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (explaining "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify"). Even if an impairment does not meet the criteria of a Listing, it can medically equal the criteria of a Listing. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria).

9

Listing 11.02 applies to epilepsy that is "documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment," with either daytime episodes or "nocturnal episodes manifesting residuals which interfere significantly with activity during the day." 20 C.F.R. § 404, Subpt. P., App. 1, § 11.02. In making his step-three finding, the ALJ concluded the medical evidence did not support a finding that Claimant's condition met or equaled the criteria of a Listing, including Listing 11.02. (R. 13). With respect to Listing 11.02, the ALJ explained

> [t]here is no documentation of a seizure disorder either by EEG or by brain scan, and there is no documentation of the frequency of the [C]laimant's seizures. An EEG on November 1, 2005 was normal with no evidence of focal or generalized seizures. It appears that the [C]laimant is non-compliant with seizure medication. On January 4, 2006, he reported that he stopped taking seizure medication [two] years earlier due to inability to pay. Dilantin levels were sub-therapeutic on January 4, 2006, at 7.2, and at 2.6 on March 27, 2006.

(R. 13). Claimant contends the ALJ erred in making each of the above factual findings.

First, with respect the lack of documentation of seizure disorder by EEG, Claimant contends such documentation is "immaterial" and "irrelevant" but cites no authority for this claim. Pl.'s Mem. at 10-11. However, contrary to Claimant's assertion, "[d]ocumentation *must* include at least one electroencephalogram (EEG)." *See* S.S.R. 87-6, 1987 WL 109184, at *3 (Nov. 30, 1986) (emphasis added). Accordingly, the ALJ did not err in relying in part on Claimant's November 2005 EEG results in determining Claimant did not meet Listing 11.02.

Next, Claimant avers the ALJ erred in finding that documentation of the frequency of Claimant's seizures was nonexistent. Pl.'s Mem. at 11. The Court agrees that the ALJ erred in concluding that the frequency of Claimant's seizures in spite of three months of prescribed

10

treatment is undocumented; however, this error is harmless. The medical evidence providing such documentation, dated 24 July 2006 and 23 October 2006, was secured and incorporated into the record by the ALJ on 3 April 2007 (approximately four months after the administrative hearing). During Claimant's July 2006 Neurology Clinic visit, Claimant reported generalized seizures "progressively increasing" subsequent to the April 2006 clinic visit and in particular, experiencing one seizure every three weeks. (R. 19D). However, Claimant admitted to medication non-compliance during the four weeks immediately preceding the July 2006 visit due to financial difficulties. *Id.* During Claimant's 23 October 2006 follow-up appointment, Claimant reported having three daytime seizures and some "minor seizures" during his sleep (witnessed by his girlfriend[2]) subsequent to the July 2006 appointment despite taking his medication as prescribed and achieving an anticonvulsant blood level in the therapeutic range. (R. 19G, 19J); *see* S.S.R. 87-6, 1987 WL 109184, at *3 (Nov. 30, 1986) (explaining "blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance with the prescribed treatment"). Claimant's treating physician provided Claimant a voucher and prescription for Depakote. (R. 19H).

While the above evidence indicates Claimant followed prescribed treatment for a three month period, it does not indicate when the three documented daytime seizures occurred. However, "[t]o meet the listing criteria, major motor seizures must be occurring *more frequently*

---

[2] Defendant opines that "[Claimant] presumes that his own complaints and those of his girlfriend are sufficient to document the frequency of seizures. However...[Claimant's] credibility is not strong, leaving only second-hand accounts from his girlfriend, who was supporting him financially." Mem. in Supp. of the Comm'r's Mot. for J. on the Pleadings at 16 ("Def.'s Mem."). However, "[d]ue to the nature of the impairment, a complete description of a seizure cannot be obtained from the claimant. Therefore, if professional observation is not available, it is essential that a description be obtained from a third party (i.e., family member, neighbor, etc.)." S.S.R. 87-6, 1987 WL 109184, at *3 (Nov. 30, 1986).

Case 7:07-cv-00180-FL   Document 25   Filed 09/18/08   Page 11 of 20

*than once a month*...in spite of at least 3 months of prescribed treatment." S.S.R. 87-6, 1987 WL 109184, at *3 (emphasis added). Accordingly, Claimant has not met his burden with respect to this issue.

Finally, Claimant faults the ALJ for noting Claimant's noncompliance regarding his anticonvulsant medication. Pl.'s Mem. at 12. "Persistent attempts by the individual to obtain relief of...symptoms, such as by increasing medications...generally lend support to an individual's allegations of intense and persistence symptoms." S.S.R. 96-7p, 1996 WL 374186, at *7. In contrast, however,

> [An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.... However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id.* The inability to afford medical treatment with no access to free or low-cost medication services is a sufficient reason for infrequent medical visits. S.S.R. 96-7p, 1996 WL 374186, at *8 (July 2, 1996); *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding it was improper to consider a disability claimant's failure to seek treatment in determining whether an impairment was severe when the failure was justified by lack of funds).

There is evidence in the record indicating that Claimant encountered difficulty in obtaining medication due to cost. For example, on 24 July 2006, Claimant's treating physician noted that Claimant was provided with sample medications due to financial difficulties. (R. 19E). However, this Court finds the ALJ did not err in considering Claimant's noncompliance given (1) Claimant's admission to using marijuana up to two times per week (R. 16, 163), (2)

12

Claimant's admission to smoking up to two packs of cigarettes per day (R. 16, 19E, 129) and (3) Claimant's failure to provide the ALJ with documentation supporting Claimant's inability to obtain financial assistance despite the ALJ's request for such information within fifteen days of the administrative hearing. (R. 166-67). With respect to information documenting Claimant's efforts to obtain free or low-cost medical services, the Court notes also Claimant's treating physician stated that "[Claimant] will benefit from drug assistance program or charity care and we will have [him] speak with a social worker today." *Id.* However, Claimant submitted no documentation evidencing such a meeting.

For the reasons state above, this Court rejects Claimant's challenge to the ALJ's finding that his impairments do not meet or equal listing 11.02 and the ALJ's analysis thereof.

### III. The ALJ properly assessed Claimant's credibility and did not require the presence of objective medical evidence of pain.

Claimant argues that the ALJ improperly evaluated his credibility, and in particular, his testimony concerning the disabling effects of his pain. Pl.'s Mem. at 15. This Court disagrees.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. § 404.1529(c)(1); S.S.R. 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish his capacity to work to the

13

extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In addition to the objective medical evidence, the following factors are relevant to an assessment of a claimant's claims of the intensity and persistence of his symptoms, such as pain, and the extent to which those symptoms limit the claimant's capacity for work:

(1) effect of symptoms on claimant's daily activities
(2) location, duration, frequency and intensity of the symptom(s)
(3) factors that precipitate or aggravate claimant's symptoms
(4) type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5) non-medical treatment received for relief of the symptom(s)
(6) any non-treatment measures used to relieve the symptom(s)
(7) other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination and analysis of Claimant's complaints of pain pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ summarized Claimant's medical records concerning Claimant's hospitalization

14

following a motor vehicle accident and noted the modest findings on diagnostic testing. (R. 16, 18). The ALJ also summarized the medical records concerning Claimant's seizure. *Id.* Claimant contends however that with respect the injuries sustained in the motor vehicle accident, the ALJ "pick[ed]-out portions of the medical record that were 'unremarkable' but ignored [other evidence]." *See* Pl.'s Mem. at 15. In particular, Claimant contends the ALJ ignored medical documentation of a fractured rib and clavicle, blunt force trauma to the lungs and abdomen, an injured spleen, a swollen hip and a right hemopneumothorax. *Id.* To the contrary, the ALJ discussed the diagnostic exams associated with the above injuries and concluded based on those examinations, that Claimant's "impairments are not likely to cause the degree of pain alleged by [C]laimant." (R. 16). *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) ("Although a claimant's [pain] allegations may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence."). The ALJ found further that no apparent residuals exist from the motor vehicle accident, noting Claimant's full range of motion of and good strength in both the upper and lower extremities. (R. 17).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's daily activities, which

15

include performing household chores, feeding and walking his dogs and those of his neighbors, mowing his yard and those of his neighbors and shopping; (2) the lack of frequent emergency room visits or hospitalization for treatment of seizures despite Claimant's allegations of two to three seizures per month and the lack of prescribed pain relievers despite Claimant's complaints of pain in his left shoulder and hip; (3) Claimant's noncompliance with seizure medication and Claimant's claim that he is unable to afford medication; and (4) Claimant's purchase and weekly use of marijuana. (R. 15-16, 18). Moreover, the ALJ noted that no opinions by treating physicians as to Claimant's functional abilities appears in the record. (R. 18).

The ALJ properly evaluated Claimant's subjective accounts of his pain and other symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant should not lift more than fifty pounds occasionally reflects the weight and credibility he afforded Claimant's subjective statements about his pain. The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of his limitations was inconsistent with available objective evidence. (R. 21). In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

16

Case 7:07-cv-00180-FL   Document 25   Filed 09/18/08   Page 16 of 20

## IV. The ALJ did not err in relying on the Grids.

Finally, Claimant argues the ALJ erred by failing to call a VE to testify as to the impact of Claimant's nonexertional limitation on the medium occupational base.[3] Pl.'s Mem. at 16-18.

Once a claimant successfully demonstrates that he cannot perform his past relevant work, the burden shifts to the Commissioner to show that the claimant, based on his age, education, work experience and RFC, can perform other substantial gainful work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Pass*, 65 F.3d at 1203. The ALJ may carry this burden through the use of the Grids if a claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level. *Coffman*, 829 F.2d at 518; *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). However, an ALJ may not rely exclusively upon the Grids in cases involving two types of claimants: those who suffer a disability present in the absence of physical exertion and those who suffer in exertion a disability that restricts their ability to perform a full range of work at a given exertional level. *Hammond*, 765 F.2d at 425-26. In both such cases, an ALJ must go beyond the Grids and "produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant." *Id.* at 426; *see Gory*, 712 F. 2d at 931 ("If only nonexertional limitations are claimed, the [Grids] do not direct a conclusion of either disability or non-disability."); *Grant v. Schweiker*,

---

[3] Within this assignment of error, Claimant contends also that no medical opinion exists to support the ALJ's finding Claimant can perform a full range of medium work. Pl.'s Mem. at 16. Despite Claimant's contention however, a state agency consultant found Claimant capable of performing medium work (R. 132-39), an assessment subsequently affirmed by another state agency consultant. (R. 144). The ALJ accorded the assessment "substantial weight." (R. 17). Absent evidence from treating sources which conflicted with that offered by the state agency consultant, the ALJ was at liberty to accept that opinion to determine Claimant's work-related capacity. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (explaining opinion of non-examining physician can constitute substantial evidence to support the decision of the ALJ).

17

699 F.2d 189, 192 (4th Cir. 1983) ("where the claimant's impairment is nonexertional...the [G]rids' [r]ules are not conclusive, and full individualized consideration must be given to all relevant facts of the case.").

However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the Grids. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). Rather, "the proper inquiry...is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Id.*; *see also Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984) ("If a nonexertional condition reduces an individual's residual functional capacity to perform sedentary work, it is inappropriate to apply the [G]rids because the range of jobs available to the impaired claimant is narrower than the [G]rids would indicate."). When a claimant has a combination of nonexertional and exertional limitations and it is clear that the nonexertional limitations will have little effect upon the exertional occupational base, the finding directed by the Grids is sufficient and VE testimony is unnecessary. S.S.R. 83-14, 1983 WL 31254, at *6; *see Smith*, 719 F.2d at 725 (holding reliance on the Grids is precluded only if the nonexertional condition affects claimant's RFC to perform work of which he is exertionally capable); *see also Rogers v. Barnhart*, 207 F. Supp. 2d 885, 896 (W.D.N.C. 2002) (noting the ALJ was not obligated to employ a VE because claimant's nonexertional impairments did not rise to a level which prevented a wide range of activity at the sedentary level).

Here, the ALJ found Claimant's allegation of seizures produced nonexertional limitations. (R. 17). Specifically, Claimant should be limited to medium work which does not require exposure to hazards or the climbing of ladders, scaffolds or ropes. *Id.* Finding these

18

environmental restrictions would not significantly erode the occupational base of jobs at the medium exertional level, the ALJ concluded Claimant was "not disabled" under the framework of section 203.25 of the Grids. (R. 18). Claimant contends his non-exertional limitations require vocational expert testimony, and by failing to elicit testimony from a VE, the ALJ has not met his burden. Pl.'s Mem. at 18.

The Court finds the ALJ's use of the Grids was appropriate. Citing S.S.R. 85-15, the ALJ explained "[a] person with a seizure disorder, who is restricted only from being at unprotected heights and/or other hazards, including dangerous moving machinery, is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." (R. 17) (citing S.S.R. 85-15, 1985 WL 56857 at *8 (Nov. 30, 1984)); *see also* S.S.R. 83-14, 1983 WL 31254, at *5 (Nov. 30, 1982) (explaining "limitations of...activities [such as climbing ladders and scaffolding] would not significantly affect the [medium] occupational base"). Thus, the ALJ properly concluded Claimant's non-exertional impairment would not prevent him from performing all the work activities he is otherwise exertionally capable of performing. As such, the finding directed by the Grids is proper and testimony from a VE was not required.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be upheld.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to

19

file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 17th day of September, 2008.

*[signature]*
Robert B. Jones, Jr.
United States Magistrate Judge